Good morning, may it please the Court. I'm George Murphy, appearing on behalf of Plaintiffs and Appellants Aleta Guthrie and Areta Guthrie. At Council table is Amy Robertson, Counsel for AMIKI. And without further ado, I'd like to transfer the remainder of my time to her. Okay, she's Counselor for who? AMIKI Parties. All of the AMIKA's Parties. Okay. Alright, so she'll be taking all the time. She will. Alright, so we'll go back to 10 and start and come up, Ms. Robertson. Thank you. Thank you. Thank you, Your Honor, and may it please the Court. My name is Amy Robertson, and I represent the Disability Rights Education and Defense Fund and the other AMIKI in this action. I'm going to attempt to reserve two minutes for rebuttal. Okay. To answer the question posed by the Court, yes, Alta is a place of public accommodation under Title III of the ADA because it's a social services establishment that does business from an actual physical place, administering disability services in a physical office, and it's alleged to have failed to provide those services or refused to provide those services on the basis of disability. So I'm just kind of we follow things. It would appear that the young woman involved is presently in a place and receiving the services, but no one's claiming this is moot, correct? I have not seen a mootness argument raised on appeal. Okay, but she is now in a suitable location is my understanding. Well, we don't go to the peanut gallery to ask questions. That is my understanding. I apologize, Your Honor. Yes. Okay. So go ahead. I do have a question along those lines, though. The complaint also seeks damages, which presumably would not necessarily be moot as opposed to the other claims. That's correct, Your Honor. The claims under Title III itself does not have a damages remedy, but there are live claims under both Section 504 of the Rehabilitation Act and the Unruh Civil Rights Act and others that do have damages remedies that would not be moot, whatever her services status would be at this time. Thank you, Your Honors. ULTA makes three arguments in its attempt to exclude itself from the coverage of Title III. It first argues that it doesn't provide social services at all, but this is belied by the language of its own briefing, including the supplemental brief, where it states that it determines eligibility, assesses needs, and coordinates vendor services for individuals with developmental disabilities, its clients. I have a question. It sort of seems I feel like the wire case, or weir, or however you pronounce that, is somewhat of an impediment to you in terms of, and obviously we're bound by our own precedent. And so I want to address that. And it's occurred to me that this place of accommodation, the way that the statute is written, hasn't really quite kept up with technology. Were there other ways that I feel like we're trying to put a square peg into a round hole here? And I clearly think that when people don't get the services that they would be entitled to, they should have a way to sue. Is there another way to sue besides this particular statute, or does it have to be wedged into this place of accommodation, which seems a little hard to do for me? So I'll take those in order. Weir, in the end, does not fit here. In Weir, it's true there was a physical insurance office, but this court ultimately held that a benefit plan offered by an employer, and it was that disconnect where the benefit plan was being offered by the employer, a Title I entity, is not a good or service offered by a public accommodation at all. In contrast here, Alta and the vendors are offering their services directly to the public. And while I know that this court and others has wrestled with, for example, under Robles, what do you do about cyberspace? What do you do about this commercial? Yeah, it just doesn't seem like when the statute was written it anticipated that, and now we're trying to make it fit. That said, well, I think that this situation would have been recognizable to the drafters in 1990 as exactly covered by Title III. It's a social services establishment, which is in the definition. It has a physical place of business, which this court required in Weir, not required in the First Circuit, but it is required here, and it exists here. And it's providing services, all of those disability administration services, and direct services through contract that are administered, that are happening from that physical place of business. So I think this is exactly what the drafters of Title III would have had in mind. Is there any other way to sue when you don't get what you're entitled to in a situation like this, or does it have to be crammed into this statute? Respectfully, I would choose a different verb, but deferring to the court, the client has also raised claims under Title II of the ADA, under Section 504 of the Rehabilitation Act, having alleged in the complaint that the entities receive federal funding, possible that in an analogous situation there would be a claim against the state, because the state has subcontracted its duties to individuals with developmental disabilities. The reason Amiki wrote, though, was because the version of Title... Well, I think Amiki said they weren't taking a position, but you're clearly taking a position consistent with the appellant. So that's a little bit of a... I think, candidly, we just didn't want to know the entire record, potentially. We wanted to address specific legal issues that we believe the district court got wrong and that we were very concerned would then be cited, even if it's unpublished, it's right there in Westlaw. There are a number of very misguided holdings in the district court decision, and that's why we wrote. Is there anything in the law that said that coordination of care is not a social service that would make an office a social service center establishment? There is nothing in the law that says that, and, in fact, I think one of the interesting things is that one of the ways that ALTA is trying to escape coverage of Title III is to make this a textual distinction between sort of administrative office-based services and hands-on services. There's no such distinction in the statute, and, in fact, the statutory language prohibits discrimination in methods of administration. That's exactly what ALTA... Well, I guess you're saying there's nothing that prevents it, but I guess it appears that ALTA coordinates a provision of services to the public by other entities, right? Is that what ALTA does? That is among the things that it does. But I guess what's your best authority? You're saying nothing prevents it, but what's your best authority that ALTA is nonetheless covered by 42 U.S.C. 1218A? So the argument that I offered to Judge Koh was, in fact, an affirmative argument. Title III, the statutory language of Title III, prohibits discrimination in methods of administration, and that's exactly what ALTA is doing. That is why what ALTA is doing in its physical offices is covered by 12182B, you know, the construction language. Well, hypothetically, if I agree... Let's say I don't agree with you on one side, but I agree with you that the 504 has to go back. I'm saying this hypothetically. Does 504 give you everything that you're asking for? 504 would, yes. 504 covers the same ground as Title III does. It prohibits disability discrimination. It prohibits methods of administration that discriminate. I see I've wandered into my rebuttal time. Well, let me make sure before, if my colleagues want to ask you anything right now. No, thank you. Okay, so then we'll give you 2 minutes for rebuttal. Thank you. It goes fast. Let me ask how the appellees are dividing up. Are you dividing up by subject matter, by entity? How are you dividing your 6-2-2 minutes? Well, it's certainly by subject matter. This is Anthony DeMaria, may it please the Court. I'm here for ALTA, and I am addressing the issue of public accommodation via ALTA. And my other counsel are here to address other issues. What other issues? I just want to know so we can know who to ask which questions to. I'll let them speak. Okay, a group hug now. Come on up. Good morning, Your Honors. May it please the Court. I'm Jonathan Riddell, appearing on behalf of Strategies to Empower People and Tammy Smith. And my understanding is we have agreed amongst the appellees' counsel that we'll be addressing the initial issue that the Court ordered the parties to be prepared to answer, which is whether or not ALTA is a place of public accommodation. Mr. DeMaria is here to address that particular issue. And then my understanding is, well, I know what my role is here, but it's to answer any other additional questions that relate to my clients. And then I believe that my colleague here, on behalf of on my own, will be addressing any issues that are relevant directly to her clients as well. I hope that's answered your questions, Your Honors. Thank you. Okay, Mr. DeMaria is back at the podium, and you can proceed. Thank you, Your Honors. I appreciated the questions. I listened carefully. You raised several issues. One question has to be raised. You see it in the Weyer case. That's how I pronounce it, Your Honor. You see it in the other cases that followed, is there's got to be a nexus. So a lot of discussion has taken place here as to what may or may not happen in the building. Do you visit with the client? Well, did the district court address nexus? To me, I thought the district court sort of kicked it out under the public accommodations. So, yeah, nexus is also required. But was that even addressed down below? Well, Your Honor, I'd have to look at the exact language of the order, but you're not a qualifying place of public accommodation if there's no nexus to the alleged services. So you get there the same way if that answers the question. But in Weyer, the employees got their insurance through the employer and not through the insurance company directly. So they never had to go to the insurance company directly. But here there are allegations in the complaint that the appellant specifically went to ALTA's offices for their services. Your Honor, if I could. What is the lack of nexus here? They went there for their coordination of care services provided by ALTA. They went to the physical offices of ALTA. So where is the nexus gap here, whereas I can clearly see it in Weyer? Well, actually, Your Honor, let me point it out to you. You see the same thing here. For instance, if you take a look at the cases, the Robles and the Target case, Target not even being on the appellant level, it was a direct access from defendant to defendant's other location. So in this case, there was a little leap in the statement made, and that is that the services that they came to us for were provided to them in our office. That's not entirely correct. The services they sought in the region for a regional service to even exist for a regional center is to refer people for services at other places. Right. But what if I don't agree with your care coordination? You're falling back on your care coordination argument, right? Saying we just provide coordination of care. We don't provide the care itself. That's right. Right? That is your argument. Right. But that doesn't make sense to me because the care you provide is the coordination of care. Otherwise, you wouldn't exist. If you were a nonentity and people went directly to the service vendors, you wouldn't exist. That is your role in this system. You provide the coordination to those vendors. That is your service, is it not? That is the service. But I think the suggestion is there would be no remedy unless you sued us directly, and that is, of course, not the case. There are other mechanisms to sue the service provider, whether it be a malpractice action, not that they were raised here in many of the areas. But not if you're the one that allegedly violated the statute. Counsel, why does that matter? If a party has remedies against several entities or several types of remedies against one entity, it's not an answer to say one of them has to go away because they have another way to get what they need. I don't understand the relevance of saying that they could sue somebody else also. That was just in response to the question. The critical issue here is under Title III, the claim of ADA to be a public accommodation discrimination, there has to be a nexus between the service you're actually providing at the physical location. That is wire, that is what happened in Target, that's what happened in Robles. There has to be something that's tied to your physical location for the service. The service that's sought in this case and in the regional centers is not service to be provided at our location. We exist to refer people to another location. Okay, so your contention is that when the appellants went to the ALTA office, they were not seeking the care coordination services provided by ALTA. No, they were. That's your position. They were. They were not seeking the care itself. They were seeking the referral. Right, but by your concession, if we find that the care coordination services would qualify the ALTA office as a social service center establishment, then you would satisfy the public accommodation requirement. I'm sorry. If I were to agree that we were a social service center, then I guess it would satisfy it. I do not agree that we are a social service location. Our purpose is solely to refer people to other locations to get the services. That is our purpose. So the complaint by the plaintiff. And so that is a service you provide to disabled or individuals with disabilities, correct? It is. And you're saying your offices should not be required to comply with the ADA, even though your service constituents have disabilities, but you're not required to comply with the ADA. Is that correct? Because you're not a place of public accommodation. Not at all, Your Honor. I'm saying the context of the complaint. But isn't that the next step? It is not. So you say we're not a social service center establishment. We're not required to comply with the ADA for our clients. Not at all, Your Honor. In this case, the claim, if you look specifically at the complaint, the complaint claim is that the service providers to whom they referred them discriminated against them. And the claim is that we should be essentially vicariously liable for the fact that we referred them there. No, there's also a separate claim against ALTA. And those are the facts that give rise to the claim. Counsel, isn't there a difference between not being covered by the statute and failure to state a claim because the allegations don't get you there? And it seems to me that certainly even if you're a place of public accommodation, there may be a failure to state a claim for other reasons. But I'm having the same difficulty as Judge Koh understanding why you're not a place of public accommodation that's subject to the statute. Well, in this circumstance, the claim against us is not that we discriminated against her disability at our physical location for any particular purpose of her disability. For instance, I think the context you're looking for is if we had a phone service and in order to coordinate our services so that we could refer you out, you had to call into our phone service, but the phone service did not allow for the hearing disabled or those who could not push the buttons. Then it would be a nexus to our service. Or that coming into our building in order to get the services, we had some sort of an ADA violation. Then it would be a nexus. But in this circumstance, it tells regional centers that when you do your obligation to refer people out to other locations for services, if they discriminate, you're vicariously liable solely because you're the one that referred them there. Well, no. If I look at paragraph 43 and 44 of the Second Amendment complaint, the allegation is specifically against ALTA and ALTA's policies in 2014. That preceded the involvement of STEP and OMA, which doesn't take place until 2016, 2017. So I'm not commenting on the merits of these allegations, right? There are other problems with this complaint. But at least as to this issue, the 2014 claim is against ALTA and ALTA's policy. But the obligation of ALTA's policies, the obligation of our activities, is to make the referral out to the provider. There's no allegation that we didn't make the referral. The allegation is that we made referrals that did not work or that people did not comply with their obligations. I have a question. Yes. So the Tenth Circuit in Leverson v. Octopharma, Plasma, defined a service establishment as a place of business or a public or private institution that by its conduct or performance assists or benefits someone or something or provides useful labor without producing a tangible good for a customer or a client. If that were the definition in the Ninth Circuit, do the defendants in this case come within that definition? I think that definition doesn't go far enough to tie us because the question is do we do one measure of referral and that we assist in referring to an outside service. So it's closer. It's closer, definitely closer. I would agree. So then would your argument be that WIRE is limiting from us adopting that definition? I think all of the decisions, WIRE and ROBLIS, are limiting because of the lack of the nexus to the claim. The nexus of the claim is that the people to whom you referred us discriminated against us. You see that in the 70s paragraphs, I think 99 to 102. And in that case, all of the decisions we see, there is nothing that is extended from one person referring to another. And by the way, just so I could get it on the record, in the Castle case that was referred to, that is a prison case where there is a federal statute tying them to that would not apply. There's nothing there. So your argument, I'm trying to understand your argument. Sure. So if an entity discriminates against an individual in violation of the ADA but is not a place of public accommodation, may the individual sue the entity under some other statute? I would believe so. And what statute would that be? Well, then I have to line up my client on a case. Well, like 504? Is that closer here? 504, of course, is closer. We know that's rehabilitation and not as far as, say, a school IEP. However, we know that on 504 there has to be a deliberate indifference argument. Okay. That goes to the merits. It does. Okay. So let me find out if my colleagues, we've taken you over. Thank you. But do either of my colleagues have additional questions? No, thank you. No, thanks. Thank you very much. I appreciate your time and your questions.  Thank you. So we'll go to, it looks like Ms. Williams is approaching, and you have two minutes. Good morning, Your Honors. May it please the Court. Andrea Williams. Good morning. Andrea Williams on behalf of On My Own Independent Living Services and individual defendants and appellees Mary McGlade and Michelle Ramirez. I don't want to belabor what we've already discussed here. I just want to point out some of the issues that are particular to OMO in this case. And first, with regard to the Title III claim, OMO is also not a place of public accommodation. There is actually no physical office where anyone comes to receive goods or services, so we never get past that first step with OMO. And the second portion of that is that the second amended complaint doesn't allege that the appellants ever went to a physical place to receive goods or services that is operated by OMO. The SAC simply says that. So you're factually a little bit different. What about 504, though? So regardless of what may or may not be considered with respect to the district court's opinion and how it was written, there still is no claim under the Rehabilitation Act for two reasons. First, OMO does not receive federal funding. And two, the way that the SAC was written, they did not claim discrimination based solely on disability. So with regard to federal funding, OMO, as was said in the second amended complaint, the opening brief, and in the amicus brief, OMO receives its funding from ALTA, not directly from the federal funding. And there is case law, Supreme Court case law, it's the disabled or not disabled, paralyzed Veterans of America case from the Supreme Court that says that money has to be directly allocated in order for it to fall under 504. And in this case, that is not what is going on. OMO is receiving its funding from ALTA. I agree that OMO is in a different situation than the other two. But I did have a question for you. And you agree that the Supreme Court has said that public accommodation should be construed liberally, correct? Yes. So I actually, well, I don't like two minutes anyway. But unless this Court has any further questions, I'm happy to relinquish. We do not appear to. Thank you. No, thank you. Thank you. All right. Mr. Riddell is approaching. Good morning again, Justices. There is no justice on the Ninth Circuit. I'm sorry, Judges. I'm sorry. So getting back to the questions that were recently directed to on my own counsel with respect to where, the issue there under Title III is whether or not in this circuit, whether the places are physical places where goods or services. I'm sorry. Since we've got a minute and 40 seconds, I'm going to go ahead and jump to my question, if you don't mind. Okay. Paragraph 137 of the Second Amendment complaint alleges that STEP physically provided necessary service to plaintiffs on site directly out of their offices, and alleges that the appellants met with STEP staff at STEP's offices for the purposes of getting their services from STEP. So why aren't those allegations sufficient? Well, because that very same complaint, Your Honor, at 4ER637. Can you just cite the paragraph number? That will be easier for me to find. Paragraph 23 of the Second Amendment complaint states that STEP is a private provider of services that could, quote, not initiate or provide any services. I don't think you're looking at the Second Amendment complaint. My paragraph 23 says vendors may not initiate or provide any new or updated services for clients until a regional center has issued a duly executed authorization to purchase services. Is there a different number? I apologize. There is a section of the Second Amendment complaint that says what I just quoted. I have double cites in my notes here. That was where I was going next, Your Honor, was that vendors, i.e., STEP and on my own, may not initiate or provide any services for clients until a regional center has issued a duly executed authorization to purchase services. And as a result of that, STEP and on my own as vendors are not open to the public. They are not places where the public comes to get those goods and services. Your argument is the specific group of disabled individuals who are referred. That's your argument you're making now? It has to be. Okay. How is that any different than a homeless shelter? Those also get referrals. Senior citizen center also get referrals based on certain criteria. Secondary undergraduate, postgraduate, private school also have separate admissions. How are you different from those? Well, by law, we're what's defined as a social service center. We don't fall within that definition, I don't think. Moreover, Your Honor, the Second Amendment complaint, this whole case is about the motion to dismiss, and it's about the sufficiency of the allegations in the Second Amendment complaint. But answer my question, because that is your defense now, right, that you have a specific population that has to meet a criteria to be eligible for your services. How is that any different than a homeless shelter, than a senior citizen center? All of those people are equally referred, have specific criteria that they meet. Because we have to enter into, and the Second Amendment complaint also references this, we have to enter into contracts after receiving a referral. So the individual that needs services goes to the regional center. The regional center can refer that individual to On My Own, or they could refer that individual to Strategies to Empower People or another vendor. If they don't. Can you tell me? I'm sorry to interrupt you. If they don't. Tell me about your constituent clients. Are they individuals with disabilities? That's correct. And you're saying you're not required as a service provider to individuals with disabilities to comply with ADA, that your offices need not comply with ADA. That is not what I'm saying, Your Honor. We're saying that the law of this land is that a place has to be a place of public accommodation where the public goes to get those goods and services. Here, the public cannot come into STEP and demand to receive services or ask for services. STEP would not get paid for services in the absence of a referral. There is a process that needs to be followed. The individual needs to go to a regional center and get a referral. Once that referral is made, then one of the vendors can provide those services. But here, as it's alleged in the complaint, again, it goes back to what's alleged in the complaint. So once there's a referral, then you are a place of public accommodation? I'm sorry? So once a referral is made, you are a place of public accommodation? No, not under the definition. We are not a place of public accommodation. Okay. Any additional questions? No, thank you. All right. Thank you. All right. You have two minutes for rebuttal, but if we have additional questions, please continue to answer. Thank you, Your Honor. I will. I'm going to maybe hop around a little. ULTA argues that it just does referrals, but that actually skips over services that it admits it performs for people with disabilities before you get to the referral. So it has to do assessments. It does care coordination. It does case management. And these are all services that it provides directly to its consumers, to individuals with developmental disabilities. And those have a nexus that really is so tight with the physical place of public accommodation, the physical office, that nexus almost isn't helpful here. It's really like the nexus between the pizza and the pizza place, not the website and the pizza place. What about OMO? They seem to be in a different posture. I would say based on the allegations in the complaint, OMO is the one place where the allegations don't reach meetings having happened on site. For ULTA and STEP, there are allegations in the Second Amendment complaint that the plaintiff's But you concede OMO is not a place of public accommodation. I do not concede that. Why not? Because it has a physical place. It provides services to people with disabilities. That place does have meetings with the public. I don't believe there are allegations in the Second Amendment complaint that these specific individuals met on site at OMO. It doesn't take it out of that bucket for all purposes. I want to speak briefly about ULTA's continuing responsibility after it makes the referral. It's making a referral to vendors with which it has contracts, and that is covered in the explicit language of Title III. We cited Castle v. Eurofresh because it interprets identical language in Title II, but the language of the statute covers this. ULTA is not allowed to discriminate directly or through contractual licensing or other arrangements. So when it subcontracts to provide the services that the DDS system requires it to provide, when it subcontracts with vendors, it remains liable for whatever the vendors do. That said, if I may make a final point, ULTA itself in the Second Amendment complaint is accused of discriminating in its own services by refusing to provide services to the Guthries because Alita Guthrie used a feeding tube. So that is their own policy, their method of administration, administered from their physical offices, and it discriminated against the Guthries. If there are no further questions, I'll close. Any further questions? No, thank you. No, thank you. Thank you both for your argument. This matter will stand submitted. Thank you.
judges: GRABER, CALLAHAN, KOH